**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

AMFED DE JESUS LUQUEZ,

Petitioner

v.

TODD BLANCHE, et al.,

RESPONDENTS

Case No.: 2:26-cv-01823-APG-EJY

**Amended Order (1) Granting Amended Petition for a Writ of Habeas Corpus, (2) Denying Luquez's Motion for a Temporary Restraining Order as Moot, (3) Granting the Federal Respondents' Motion for an Extension of Time to Respond, and (4) Denying Luquez's Motion for Leave to File a Supplemental Brief as Moot**

[ECF Nos. 7, 9, 11, 12]

After issuing an order in this case on August 15, 2026, I found an error on page 7, lines 3-4 of that order. ECF No. 16 at 7. That sentence should read: "Where § 1225(b) does not justify detention, its implementing regulation cannot." A corrected order follows below:

Petitioner Amfed De Jesus Luquez is a citizen of Nicaragua who is currently being detained by Immigration and Customs Enforcement (ICE). ECF No. 7 at 3. He entered the United States in 2023 at Los Angeles International Airport under the Nicaraguan Humanitarian Parole Program, which granted him parole under 8 U.S.C. § 1182(d)(5)(A). *Id*. at 4; ECF No. 8-3 at 2-3. His parole was valid until July 2025. ECF No. 8-3 at 4. He obtained a work permit and social security number and applied to become a lawful permanent resident. ECF No. 7 at 1-2.

In April 2026, he was arrested in Las Vegas for misdemeanor domestic battery. *Id*. at 6. He was then transferred to ICE custody, and ICE initiated removal proceedings against him. ECF Nos. 7 at 6; 8-3 at 4. An ICE officer made an initial custody determination that he would remain detained during his removal proceedings. ECF No. 8-6 at 2.

Days after Luquez's arrest and transfer to ICE custody, the district attorney declined to prosecute Luquez's criminal charge, and the criminal case was closed. ECF No. 8-2 at 3-4. That is his only criminal history within the United States. *See* ECF No. 8-3 at 4.

Luquez requested a custody redetermination hearing before an immigration judge (IJ). ECF No. 8-4 at 2. The IJ found that she did not have jurisdiction to release him because he was "charged as an arriving alien." *Id*. Luquez has remained in ICE custody since his arrest without a bond hearing on the merits. ECF No. 7 at 2. An IJ has yet to rule on whether he must be removed from the country because Luquez has applied for asylum. *See* ECF No. 12 at 5.

Luquez filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2241 seeking his release or a custody redetermination hearing. He first argues that the revocation of his parole without a pre-deprivation notice and hearing, leading to his current detention, violates his procedural due process rights under the Fifth Amendment. He next argues that, no matter what statute he is detained under, his continued detention is unlawful due to the unconstitutional revocation of his parole. Finally, he contends that 8 U.S.C. § 1226(a) governs his detention and entitles him to a bond hearing. He also moves for a temporary restraining order to order his immediate release and for leave to file a supplemental brief in support of that motion. The government moves for extended time to respond to Luquez's petition and opposes his petition and his motions.

## I. PETITION FOR A WRIT OF HABEAS CORPUS

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003). I have "equitable discretion" "as law and justice require" for remedying unlawful detention in habeas petitions. *Brown v. Davenport*, 596 U.S. 118, 128, 134 (2022) (quotation omitted).

**A. Luquez is detained under § 1226(a).**

The first step is to determine which immigration statute governs Luquez's detention. *See Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) ("A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." (quotation omitted)). The parties dispute whether 8 U.S.C. §§ 1225(b)(2)(A) or 1226(a) applies here.

"[A]liens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226." *Rodriguez Vazquez v. Bostock*, --- F.4th ----, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). Section 1226(a)'s implementing regulations entitle those noncitizens to an initial custody determination by an ICE officer so long as they have not committed an enumerated criminal offense. 8 U.S.C. §§ 1226(a), (c); 8 C.F.R. § 236.1(c)(8). If the ICE officer decides to detain the noncitizen, the noncitizen

may request an individualized custody redetermination hearing before an IJ. 8 C.F.R § 236.1(d)(1).

On the other hand, § 1225(b)(2)(A) "applies to unadmitted aliens seeking entry into the United States at the border." *Rodriguez Vazquez*, 2026 WL 2196424, at *7. Section 1225(b)(2)(A) mandates detention of "an alien who is an applicant for admission . . . if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" while removal proceedings occur. An applicant for admission is "[a]n alien present in the United States who has not been admitted or who arrives in the United States." *Id*. at § 1225(a)(1). Noncitizens detained under § 1225 do not receive custody redetermination hearings while detained but may be released into the country on parole under 8 U.S.C. § 1182(d)(5)(A). *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

Under § 1182(d)(5)(A) parole, the government may temporarily release applicants for admission "for urgent humanitarian reasons or significant public benefit." But that parole "shall not be regarded as admission of the alien." 8 U.S.C. § 1182(d)(5)(A). When such parole is terminated, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id*.

Because Luquez is not currently "seeking admission," § 1225(b)(2)(A) cannot govern his detention. *Rodriguez Vazquez*, 2026 WL 2196424, at *3, 11. His status as a paroled noncitizen does not change that. Under § 1182(d)(5)(A), Luquez does "return[] to the custody from which he was paroled" when his parole ends. But that provision does not justify his detention under § 1225(b)(2)(A) for two reasons. First, it does not appear that Luquez was detained when he

entered the country. He flew to the United States at Los Angeles International Airport and was paroled into the country there. So he does not have any "custody" to which to return.

Second, Luquez must satisfy all of § 1225(b)(2)(A)'s elements for that statute to mandate his on-going detention today, but he is not presently "seeking admission." *Moya v. Bondi*, No. 2:26-cv-00675-APG-DJA, 2026 WL 1481604, at *4-7 (D. Nev. May 27, 2026). Section 1225(b)(2)(A) mandates the detention of applicants for admission who are "seeking admission." The Ninth Circuit has rejected the government's interpretation that an applicant for admission is necessarily seeking admission. *Rodriguez Vazquez*, 2026 WL 2196424 at *12-18. Instead, "seeking admission" has "independent meaning." *Id*. at 11. It refers to those who are "engaged in the affirmative process of attempting to gain entry into the country, which an alien does at the border." *Id*. (quotations omitted). Noncitizens "present in the interior of the United States" do not "remain[] in the perpetual state of seeking admission." *Id*. at *14. Instead, seeking admission refers to "someone actively doing something" at a "particular point in time." *Id*. at *11, 14. Though Luquez may be legally at the border under the entry fiction, he was not physically at the border and actively trying to enter the country when he was detained. *Moya*, 2026 WL 1481604, at *5, 7; *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (describing the entry fiction as a legal doctrine where inadmissible noncitizens who were detained upon entry and then paroled into the United States have not "entered" the country). The government has not otherwise argued how Luquez is currently seeking admission. Therefore, § 1225(b)(2)(A) does not justify his detention.

Because Luquez was detained within the country and is not "seeking admission," he is detained under § 1226(a). *Rodriguez Vazquez*, 2026 WL 2196424, at *3. Accordingly, he is and has been entitled to a bond hearing. 8 C.F.R § 236.1(d)(1).

The government cites to a decision of the Board of Immigration Appeals (BIA), *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), to support its argument that Luquez is detained under § 1225(b)(2). In *Q. Li*, the BIA held that § 1225(b)(2)(A) lawfully mandated a formerly paroled noncitizen's detention during her removal proceedings due to her parole under § 1182(d)(5)(A). 29 I. & N. Dec. at 70-71. I previously ruled that *Q. Li* is not the best interpretation of §§ 1182(d)(5)(A) and 1225(b)(2)(A) because the BIA did not consider whether that noncitizen was presently "seeking admission." *Moya*, 2026 WL 1481604, at *4, 6 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385, 392 (2024)). I do so again here.

The government next cites 8 C.F.R. § 1003.19(h)(2)(i)(B) to argue that IJs do not have the authority to give custody redetermination hearings to noncitizens paroled under § 1182(d)(5)(A). That regulation states that an IJ "may not redetermine conditions of custody imposed by" ICE "with respect to . . . [a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to [§ 1182(d)(5)(A)]."

But this regulation implements 1225(b), and I already ruled that § 1225(b)(2)(A) does not govern Luquez's detention.[1] The government acknowledges that § 1003.19(h)(2)(i)(B) is tied to § 1225(b)'s statutory authority. It asserts that "[a]rriving aliens and applicants for admission who are placed into removal proceedings are detained under § 1225(b) . . . ." ECF No. 13 at 3 (citing 8 C.F.R. § 1003.19(h)(2)(i)(B)). This comports with district courts' consistent understanding for several decades that this regulation implements § 1225(b).[2] The BIA also has

---

[1] The government does not argue that Luquez is lawfully detained under § 1225(b)'s other detention provisions. *See* 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(1)(B)(iii)(IV).

[2] *See, e.g., Yeferson G.C. v. Easterwood*, No. 25-cv-4814 (MJD/DJF), 2026 WL 207266, at *2 (D. Minn. Jan. 21, 2026), *report and recommendation adopted*, No. cv 25-4814 (MJD/DJF), 2026 WL 209825 (D. Minn. Jan. 27, 2026); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 141 (D.D.C. 2018); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 806-07 (W.D. Tex. 2015); *Abdi v. Napolitano*, No. C10-1722RSL, 2011 WL 1584433, at *2 (W.D. Wash. Apr. 26, 2011); *Sidhu v.*

noted that "arriving aliens" under § 1003.19(h)(2)(i)(B) are detained under § 1225(b), not § 1226(a).[3] And § 1003.19(h)(2)(i)(B)'s use of "arriving alien" tracks the repeated uses of "arriving" in § 1225.[4] By contrast, § 1226 never uses the term "arriving" or its conjugations. Where § 1225(b) does not justify detention, its implementing regulation cannot. Therefore, § 1003.19(h)(2)(i)(B) does not preclude Luquez from receiving a bond hearing while detained because he is detained under § 1226(a), not § 1225(b)(2)(A).

**B. The proper remedy is release.**

The government has now wrongfully detained Luquez without a bond hearing for almost four months. He was detained after his criminal arrest, but the district attorney declined to prosecute and closed the criminal case days later. On the record before me, that is his only criminal history in the United States. Therefore, release, which is "the traditional remedy of habeas corpus," is appropriate. Preiser, 411 U.S. at 500.[5]

## II. CONCLUSION

I THEREFORE ORDER that petitioner Amfed De Jesus Luquez's amended petition for a writ of habeas corpus **(ECF No. 7) is GRANTED**.

---

*Chertoff*, No. 1:07-cv-00947-LJO-TAG-HC, 2009 WL 900734, at *5 (E.D. Cal. Mar. 31, 2009) (holding that, because petitioner is an arriving alien under § 1003.19(h)(2), he is not detained under § 1226); *Sillah v. Davis*, 252 F. Supp. 2d 589, 592 n.4, 594 (W.D. Tenn. 2003) (citing § 1003.19(h)(2)(i)(B)'s precursor, 8 C.F.R § 3.19(h)(2)(i)(B)).

[3] *In Re: Ya Jun Liu*, File: AXXX XX9 300, 2009 WL 2981755, at *1 (BIA Aug. 24, 2009); *In Re: Francisco Santana-Ouintero A.K.A. Francisco Quintero-Santana*, File: AXXX XX7 782, 2009 WL 1653811, at *1 (BIA May 28, 2009); *In Re: Jesus Guadalupe Maese-Castro*, File: AXXX XX7 322, 2009 WL 1653771, at *1 (BIA May 22, 2009).

[4] *E.g.* 8 U.S.C. § 1225(a)(1) (an "alien . . . who arrives in the United States" is included in the definition of an "applicant for admission"); *id*. at § 1225(b)(1)(A)(i) (an "alien . . . who is arriving in the United States" and who meets other criteria must be put into expedited removal proceedings).

[5] I do not address Luquez's due process arguments because I order his release.

I FURTHER ORDER respondent John Mattos to release Luquez from the custody of CoreCivic on **Tuesday, August 18, 2026 no later than 1:00 p.m**. The respondents must transport Luquez to 501 Las Vegas Blvd. South, Las Vegas, Nevada that same day. The respondents must advise Luquez's counsel of the estimated time of release for coordination purposes at least one hour before release.

I FURTHER ORDER that the respondents return all of Luquez's personal property to him upon his release.

I FURTHER ORDER that the respondents may not re-detain Luquez during the pendency of his current removal proceedings without a pre-deprivation, individualized hearing to determine whether detention is appropriate, pursuant to 8 C.F.R. § 236.1(d)(1).

I FURTHER ORDER that respondents are PERMANTENTLY ENJOINED from denying Luquez the ability to be released on bond on the basis that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

I FURTHER ORDER that Luquez's motion for a temporary restraining order **(ECF No. 9) is DENIED as moot**.

I FURTHER ORDER that the federal respondents' motion for an extension of time to file a response **(ECF No. 11) is GRANTED**.

I FURTHER ORDER that Luquez's motion for leave to file a supplemental brief in support of his motion for a temporary restraining order **(ECF No. 12) is DENIED as moot**.

I FURTHER ORDER the clerk of court to close this case.

DATED this 17th day of August, 2026, nunc pro tunc August 15, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE